UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL WILMER,

    Defendant.

_____/

Case No. 15-20394-7

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [92];
DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [91]**

On December 14, 2015 Defendant filed a Motion to Suppress Statements [92] and a Motion to Suppress Evidence [91]. The Government responded on January 12, 2016 [104]. A Motion hearing was held on January 20, 2016 and the Government filed a supplemental brief on January 27, 2016 [107]. For the reasons stated below, Defendant's Motions to Suppress [91; 92] are **DENIED.**

1. **RELEVANT FACTS**

Defendant is indicted for Conspiracy to Possess with Intent to Distribute Controlled Substances. Defendant's Motion to Suppress Evidence [91] concerns the a request to suppress the drug evidence seized from Defendant's vehicle

1

following a Drug Enforcement Agency (DEA) directed traffic stop on June 5, 2015.

A DEA investigation identified Lanel Loyd as a significant drug distributor. To further their investigation of Mr. Loyd, the DEA obtained orders from May through June 2015 that permitted them to intercept his communications. In early May, the DEA intercepted a series of text message between Loyd and the user of Wilmer's phone concerning what the DEA agents considered to be discussion of a drug transaction. [Government Ex. 2, Session 412] (Text message to Wilmer's phone stating "Got something big 4 u bring 1500 more with that).

In June 2015 agents intercepted more messages between Loyd's and Wilmer's phones which the DEA agents again believe referenced a drug transaction. On June 4, 2015 Loyd texted Wilmer's phone:

> Don't now what u on man cant keep doing business like this 4 real this bullshit my man can meet u n get that bread n we can b done with this. [Government Exhibit 1, Session 233].

> My mans down there he can come get that cash! [Government Exhibit 1, Session 260]

On June 4, 2015 Wilmer's phone texted Loyd the following message:

> Yo no disrespect I left my phone in my man's car last night and I just got it back I couldn't move with out it, my blow there in the am for sure I got you. [Government Exhibit 1, Session 263].

Based on these messages, the DEA agents believed that a drug deal would occur between Loyd and the user of Wilmer's phone. Based on this belief, DEA agents submitted an affidavit containing the facts about the May transaction to a Magistrate Judge who granted a search warrant for the location of the user of Wilmer's phone. The Judge agreed there was probable cause to believe that this person was engaged in drug trafficking and granted a warrant to locate the user of Wilmer's phone.

On June 5, 2015, with the use of the location information, DEA agents were able: to physically surveil Wilmer's phone travel from Pennsylvania to Detroit; to witness the phone's user stay from 9:00am to around 11:00am at a house in Detroit, which was identified as a "stash house" by the DEA; and then to see the user of Wilmer's phone leave the house and drive a car in the direction of returning to Pennsylvania. Based on their observations of the user of Wilmer's phone and the text message evidence, DEA agents requested that Michigan State Police (MSP) perform a traffic stop.

At 11:30am MSP Trooper Benjamin Sonstrom executed the traffic stop of Defendant that the DEA requested. Defendant informed Sonstrom that he did not have a driver's license and was subsequently handcuffed and placed in the front of Sonstrom's vehicle. Sonstrom asked Defendant for consent to search the vehicle

3

and Defendant gave his consent. Sonstrom used his drug detection dog, which made a positive indication on the car. After searching the car, Sonstrom discovered approximately 250 grams of cocaine in a sock underneath the seat.

Following the search, Defendant was transported to the MSP post in Taylor, Michigan. At this location, DEA agents provided *Miranda* warnings to which Defendant agreed to, and subsequently spoke with agents about his drug trafficking with Loyd.

In his pending Motions to Suppress, Defendant asserts that he was never provided his *Miranda* warnings and never consented to a search of his vehicle.

## 2. MOTION TO SUPPRESS EVIDENCE [91]

Defendant asserts that the evidence obtained from the traffic stop should be suppressed because there was no reasonable suspicion to detain Defendant, the search that resulted from the detention was not supported by probable cause and further was not consented to be Defendant.

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). This seizure is legitimate if the officer has "probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir.

2012) (citations omitted). To qualify as reasonable suspicion, an officer must have more than a "mere hunch" regarding the likelihood of criminal activity and instead requires the suspicion be based on "specific and articulable facts." *Id.* When considering if reasonable suspicion exists, Courts consider the "totality of the circumstances" and consider "all of the information available to law enforcement officials at the time." *Id*. The collective knowledge of the investigating officers, including "dispatch information, directions from other officers" and the cumulative information possessed by the person who makes the stop are all considered relevant to the analysis. *Id*.

Under the collective knowledge doctrine, the information and knowledge of the DEA agents who were surveilling the Defendant considering a drug distribution investigation can be imputed onto the MSP trooper who made the traffic stop. *Id* at 768-769 (citing United States v. Blair, 524 F.3d 740 (6th Cir.2008). Trooper Sonstrom testified that he was conducting the stop based on the probable cause determination made by the DEA agents. These agents had reasonable suspicion that Defendant was engaged in criminal activity. As argued in the Government's brief, and as supported by testimony at the hearing, the DEA agents had physical and electronic surveillance and specialized knowledge of drug transactions that identified Defendant as a person who had traveled from

5

Pennsylvania to Detroit and was in possession of a phone that was being used to communicate with a known large-scale drug trafficker about an illicit transaction. The Defendant stayed for two hours at what DEA agents believed, through their investigation, to be a drug and money stash house utilized by the Loyd drug trafficking organization, and then left and began driving back in the direction of Pennsylvania.

The totality of this information constituted a reasonable suspicion that Defendant was involved in a criminal activity. Additionally, since the phone evidence previously had been used to obtain a warrant, it supported a further probable cause finding that Defendant was engaged in criminal activity.

Defendant contends that he did not consent to a search. Trooper Sonstrom testified that he obtained consent from Defendant to search his car before deploying his canine unit to effectuate the search. Per the testimony, Trooper Sonstrom asked if there were narcotics or any other contraband in the vehicle. Upon receiving a negative answer, Trooper Sonstrom requested Defendant's consent to search the vehicle, which, per the testimony of Trooper Sonstrom, he agreed to.

Additionally, even if the consent was not valid, the search was legal because probable cause existed to search the car under the automobile exception. "[A]

6

search conducted without a warrant issued upon probable cause is *per se* unreasonable,…subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The automobile exception is well-established support for warrantless searches of automobiles. "Under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity. *Lyons* 687 F.3d at 770 (2012). "Probable cause is a reasonable ground for belief supported by less than *prima facie* proof but more than mere suspicion. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).

    As discussed above, there was substantial evidence establishing reasonable grounds for belief that the car contained evidence of criminal activity. For example, it was known that Wilmer's phone was located in the car, because DEA agents were using its location data to track the car itself. As shown above, this phone contained evidence of drug transactions in an on-going investigation of the DEA, and thus obviously is evidence of criminal activity. Additionally, since the Defendant had just been at a location suspected of being a "stash house," and the phone in the car was linked to messages regarding drug transactions, there were grounds for a reasonable belief that contraband would be found in the car. Thus the

evidence was seized legally and Defendant's Motion to Suppress Evidence [91] is **DENIED.**

3. MOTION TO SUPPRESS STATEMENTS [92]

Defendant states in his Motion to Suppress Statements that he was never advised of his Miranda rights and that he did not voluntarily and knowingly waive those rights during his interview at the MSP Post located at 12111 Telegraph Road, Taylor, Michigan. Therefore his statements made in that interview should be suppressed. In support, Defendant presents a memo from the U.S. Department of Justice dated May 12, 2014 which establishes a "presumption" that, *inter alia*, the DEA would "electronically record statements made by individuals in their custody." [92, Exhibit A].

Under *Miranda v. Arizona*, a person held in custody can be interrogated only after they have been informed of their rights, and subsequently knowingly waives them. 384 U.S. 436, 444 (1966). "Statements made in response to custodial police interrogation must be suppressed unless the suspect first waived his Miranda rights 'voluntarily, knowingly and intelligently.'" *United States v. Lawrence*, 735 F.3d 385, 436 (6th Cir. 2013). When determining whether the Defendant waived their Miranda rights, the Court looks to the totality of the circumstances. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In this case, the Government elicited testimony from Special Agent Michelin that he verbally read Defendant his Miranda rights at the outset of their interaction at the MSP post. At the hearing, Special Agent Michelin explained that his partner, Special Agent Craig Kropp, handed Special Agent Michelin his Miranda warning card, which he then read from before the interview began. Michelin also stated that Defendant verbally agreed to speak with the Special Agents following the reading of the warnings. There is no evidence of coercion or intimidation or that Defendant was unable to understand the warnings, since his first language is English. Additionally, Special Agent Michelin explained that there was no Miranda form signed by Defendant because, at that time, they were presenting themselves as MSP officers, rather than Special Agents of the DEA, to avoid revealing that there was an ongoing federal investigation. Because the DEA Miranda form would identify the officers as DEA agents, one was not presented to Defendant to sign. The testimony of Special Agent Michelin is supported by the testimony of Special Agent Kropp, who was also present at the interview.

While it is true that there no video recording of the interview made as encouraged by the policy, this is not evidence that Miranda warnings were not given. The policy itself lists several exemptions to the presumption that interviews will be recorded, including refusal by the interviewee, or when recording is not

reasonably practicable. While Special Agent Kropp could not provide good reasons for why they did not inquire about the availability of video equipment at MSP post so they could tape the interview, he testified that the interview room did not have such equipment. He also testified that he could not recall having been present at any interviews, which were in fact recorded. Considering the past history with video-taping interviews, the lack of apparent equipment at the MSP post, and the fact that the policy is not a strict requirement but rather a presumption, the fact that the interview was not videotaped does not tilt the totality of the circumstances in favor of the Defendant, nor negate the consistent testimony given by the Special Agents present at the interview.

Because there is no creditable evidence to support a claim that Defendant did not knowingly, voluntarily, and intelligently waive his Miranda rights, Defendant's Motion to Suppress Statements [92] is **DENIED.**

    **SO ORDERED**.


Dated: March 22, 2016

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge